NOT FOR PUBLICATION

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

_____
                          :
DONTE GREEN et al.,        :
                         :  Civil Action No. 13-2752 (RMB)
       Plaintiffs,   :
                         :
       v.             :  **MEMORANDUM OPINION**
                         :
CHRISTOPHER HOLMES et al.,  :
                         :
       Defendants.   :
_____:

This matter comes before the Court upon Plaintiffs' filing of a civil complaint ("Complaint") accompanied by the filing fee, see Docket Entry No. 1, and an application by Plaintiff Donte Green ("Green") seeking service of the Complaint upon all named Defendants by the U.S. Marshal, and it is appearing that:

"Green [is] an inmate . . . serving a fourteen-year sentence with a minimum ten-year, eleven-month period of parole ineligibility." Green v. New Jersey Dep't of Corr., 2011 N.J. Super. Unpub. LEXIS 561 (N.J. Super. Ct. App. Div. Mar. 8, 2011); see also https://www6.state.nj.us/DOC_Inmate/details?x=1346698&n=0 (New Jersey Department of Corrections web-page detailing Green's aliases and convictions).

Green's co-plaintiff is Sherri Goldberg ("Goldberg"), a non-incarcerated individual. See Docket Entry No. 1, at 3.

According to the Complaint, Goldberg visited Green at the

facility of Green's confinement on October 1, 2011.  See id. at 5. Either during or upon completion of that visit, Green was charged with a disciplinary infraction based on Goldberg touching him in a sexually inappropriate manner.  See id. at 5-6. Following a prison investigation, Green was administratively adjudicated guilty of a disciplinary infraction and sanctioned to ten days in isolated confinement, sixty days in segregated confinement, sixty days of loss of commutation credits and one year loss of contact visits.[1]  See id. at 7.  Green's request to review a videotape of the October 1, 2011, visitation process for the purposes of defending against the aforesaid administrative charges was denied by his prison officials.  See id. at 6.

Green appealed the administrative determination to the Superior Court of New Jersey, Appellate Division ("Appellate Division").[2]  See id. at 7.  According to the Complaint, the Appellate Division found Green's due process rights violated and remanded the matter to Green's prison officials for a re-hearing, with a directive to allow Green to review and offer the videotape

---

[1]   The Complaint also asserts that Goldberg was barred from visiting Green, by means of both contact and non-contact visits, for one year.  See Docket Entry No. 1, at 7.

[2]   This Court's own review of the Appellate Division's records failed to locate the proceeding asserted in the Complaint.  The sole proceeding this Court located yielded the decision in Green, 2011 N.J. Super. Unpub. LEXIS 561, where the Appellate Division upheld Green's disciplinary sanctions imposed upon his "use of . . . prohibited substances" and "setting a fire."  Id. at *1 and n.1

2

into evidence.  See id.  The Complaint states that, upon said re-
hearing, the administrative charges against Green were vacated
and his then-outstanding sanctions nullified except for the one-
year ban on Goldberg's visits.[3]  See id.

Plaintiffs maintain that their rights were violated by the
one-year ban on Goldberg's visits, by Green's ten-day placement
in isolated confinement, his sixty days in administrative
segregation and other sanctions.  See id. at 7-9.  Plaintiffs
seek $10,350,000 million in compensatory damages and $1 million
in punitive damages.  See id. at 11.

To the extent Plaintiff's claims are based on the events
challenged before the Appellate Division, or on the facts or
events that could have been raised in the action adjudicated by
the Appellate Division, these claims are barred by the doctrine
of res judicata.[4]

_____

[3]  The Complaint suggests that the visitation process was
never videotaped, and that fact prompted the vacatur of Green's
administrative adjudication.  See Docket Entry No. 1, at 7-8.
Although the Complaint does not detail the effect of sanction
nullification, the time-line offered in the Complaint suggests
that the sanction nullified upon re-hearing was the loss of
commutation credits.  Green's challenges to loss of such credits
could not be entertained in this matter in any event, since it is
a habeas rather than civil right claim.  See Preiser v.
Rodriguez, 411 U.S. 475, 498-99 (1973); see also Muhammad v.
Close, 540 U.S. 749 (2004).  However, since the lost credits were
restored to Green, this habeas aspect presents a distinction
without a difference in light of the Court's dismissal of this
matter under the doctrine of res judicata.

[4]  Res judicata precludes claims that either were actually
litigated or could have been litigated during a prior proceeding.

To the extent Plaintiffs' claims could be construed as asserting challenges unrelated to Plaintiff's attack on Green's disciplinary proceeding, <u>i.e.</u>, if their claims could be read as free-standing challenges based either on Green's one-year inability to receive visits with Green, or on Green's placement in isolated confinement for ten days and in segregated confinement for sixty days, the so-construed claims are meritless.

The only constitutionally protected interest which generally may be created by a prison regulation is one to be free from a condition which results in "atypical and significant hardship" in relation to the unusual incidents of imprisonment.  <u>See</u> <u>Sandin v. Conner</u>, 515 U.S. 472 (1995).  An inability to receive visitors is not atypical and unusually harsh compared to the ordinary

---

<u>R & J Holding Co. v. Redevelopment Auth. of Cnty. of Montgomery</u>, 670 F.3d 420, 427 (3d Cir. 2011).  Here, the Appellate Division action detailed in the Complaint precludes Plaintiffs from re-raising their adjudicated and related challenges.  Moreover, even if this Court were to hypothesize that Plaintiffs did not prevail in their Appellate Division matter, as they claim in their Complaint, Plaintiff would still be barred from re-litigation of their claims under a narrower court teaching, the <u>Rooker</u>-<u>Feldman</u> doctrine, <u>see</u> <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983); <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923), because – short of two narrow exceptions inapplicable here – the <u>Rooker</u>-<u>Feldman</u> doctrine bars the losing party in a state court litigation from obtaining federal review of the same claims.  <u>See</u> <u>ASARCO Inc. v. Kadish</u>, 490 U.S. 605 (1989).

circumstances contemplated by a prison sentence.[5]  Indeed, there
is no absolute constitutional right to visitation.  See Kentucky
Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989) (there
is no substantive due process right to "unfettered visitation");
Neumeyer v. Beard, 301 F. Supp.2d 349, 351 (M.D. Pa. 2004),
aff'd, 421 F.3d 210 (3d Cir. 2005) (convicted prisoners and their
families and spouses have no "constitutional right to visitation"
other than with legal counsel); see also White v. Keller, 438 F.
Supp. 110, 115-18 (D. Md. 1977) (holding that neither prisoners
nor prospective visitors have constitutional right to prison
visitation), aff'd, 588 F.2d 913 (4th Cir. 1978).  Removal from
society is a fundamental incident of imprisonment and, where
visitation is permitted, it is often narrowly circumscribed.  See
Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 461
(1989) (denying an inmate prison visitation with his mother is
well within ordinarily contemplated terms of imprisonment).  The
Supreme Court has recognized, time and again, that the
Constitution does not require that inmates be allowed visits when

---

        [5]  See Parke v. Lancaster County Prison, 1995 U.S. Dist.
LEXIS 22618 (E.D. Pa. 1995) (detailing the same); see also
Flanagan v. Shively, 783 F. Supp. 922, 934 (M.D. Pa.) (neither
convicted prisoners nor their family members have an inherent
constitutional right to visitation.  "Prison authorities have
discretion to curtail or deny visitation if they deem
appropriate, and no due process right is implicated in the
exercise of that discretion"), aff'd, 980 F.2d 722 (3d Cir.
1992), cert. denied, 510 U.S. 829 (1993); accord Buehl v. Lehman,
802 F. Supp. 1266, 1270 (E.D. Pa. 1992)(visitation is a privilege
subject to the discretion of prison authorities).

prison administrators determine, in their sound discretion, that such visits jeopardize the security of the institution or conflict with an orderly administration of the same for one reason or another.  See Block v. Rutherford, 468 U.S. 576, 589 (1984).[6]  Furthermore, to the extent that Green's part of the challenges could be construed as a First Amendment claim, his allegations are facially deficient since he did not allege that he was barred from all contacts with his family and friends, including contacts by mail and telephone.[7]  See Thorne v. Jones, 765 F.2d 1270, 1273-74 (5th Cir. 1985) (reading the challenge as a First Amendment attack and finding no associational right to visitation); see also Tormasi v. Hayman, 2011 U.S. Dist. LEXIS

---

[6]  The Supreme Court elaborated on that holding pointing out that "[w]ithdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior." Overton v. Bazzetta, 539 U.S. 126, 134 (2003).  The Court of Appeals has similarly concluded that a legitimate prohibition on visititation is acceptable even if it implicates a fundamental right, such as family relationships. See Inmates of Allegheny County v. Pierce, 612 F.2d 754, 759 (3d Cir. 1979).  A fortiori, one's self-classification as a "fiancé" or "fiancee" of an inmate cannot salvage one's claims.  See Toney v. Walsh, 2013 U.S. Dist. LEXIS 4136 (M.D. Pa. Jan. 10, 2013) (dismissing an inmate's challenges based on the disciplinary finding of infraction as a result of a visit where an officer determined that the inmate's fiancee was touching him in a sexually inappropriate manner and barring the alleged fiancee from visiting the inmate indefinitely).

[7]  Even if this Court were to presume that Goldberg is Green's only friend, and that Green has no family members whatsoever, the Complaint, read in toto, indicates that, during the year ban on her visits, Goldberg was allowed to communicate with Green by mail and telephone and did, indeed, so communicate.

25849, at *29-30 (D.N.J. Mar. 14, 2011) (a potentially viable First Amendment challenge may arise solely out of the factual pattern showing that the inmate was barred from every and all contact with his family and friends, regardless of the means of communication).

Green's ten days in isolated confinement or sixty days in segregated confinement cannot qualify as an atypical and significant hardship within the meaning of <u>Sandin</u>, 515 U.S. 472. <u>See</u> <u>Thomas v. Rosemeyer</u>, 199 F. App'x 195, 197-98 (3d Cir. 2006) (270 days in the restricted confinement was not an atypical or significant hardship); <u>Griffin v. Vaughn</u>, 112 F.3d 703, 706 n.2 (3d Cir. 1997) (fifteen months in restricted confinement did not implicate a liberty interest).  Therefore, this line of claims is, too, facially deficient.

Correspondingly, Plaintiffs' challenges will be dismissed as barred by the doctrine of <u>res judicata</u> with regard to the claims based on Green's administrative hearing and all related claims and, alternatively or in addition, for failure to state a claim upon which relief can be granted with regard to the allegations based on Goldberg's inability to visit Green and/or Green's placement in isolated and segregated confinements.

Green's application for service of process by the U.S. Marshal will be denied as moot and, in addition, for the lack of

merit.[8]

    For the foregoing reasons, Plaintiffs' Complaint will be dismissed.  Since the deficiencies plaguing the Complaint are not amenable to cure by re-pleading, leave to amend would be futile, and the Complaint will be dismissed with prejudice.  See Foman v. Davis, 371 U.S. 178, 182 (1962); Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000); Coventry v. U.S. Steel Corp., 856 F.2d 514, 519 (3d Cir. 1988).

    An appropriate Order follows.

                s/Renée Marie Bumb
                RENÉE MARIE BUMB
                **United States District Judge**

Dated: October 1, 2013

---

   [8]  Green's assertion that he is entitled to service because he prepaid the filing fee is an error: the Court is obligated to screen all prisoners' civil complaint for sua sponte dismissal upon prepayment of the filing fee or upon the grant of in forma pauperis status.  See 28 U.S.C. § 1915A (listing the grounds for dismissal and pointing out that "[t]he court shall review, before docketing, if feasible or . . . as soon as practicable [after filing] a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity . . .   [T]he term 'prisoner' means any person incarcerated or detained in any facility").   Moreover, even if Plaintiffs' Complaint were to survive this Court's sua sponte review, Plaintiffs would not be entitled to service by the U.S. Marshal without establishing both Green's and Goldberg's financial need.  See, e.g., Venkataram v. City of New York et al., Civil Action No. 11-0789 (JBS) (N.J.D.), Docket Entry No. 7 (where "Plaintiff paid the $350 filing fee at the commencement of this action, meaning that Plaintiff is not proceeding in forma pauperis, and therefore the Court is not obligated to Order the Marshal to effect service under Fed. R. Civ. P. 4(c)(3) and 28 U.S.C. § 1915; and the Court finding that Plaintiff has not demonstrated good cause for the public expense of service by U.S. Marshal to eight defendants").